OPINION OF THE COURT
Daniel R. Palmieri, J.
The motion by the plaintiff for a judgment of foreclosure and sale is denied (motion sequence No. 001), without prejudice to renewal pursuant to the terms of this order. The motion by the defendants Frank Dizazzo and Vincenza Dizazzo, sued herein as “John” Dizazzo and “Jane” Dizazzo, to dismiss the action or, in the alternative, to stay proceedings until a final determination has been made in the matter of Dizazzo v Capital Gains Plus, Inc. (Nassau County index No. 523/08) (motion sequence No. 002) is also considered as an application to vacate their default and is granted to the extent that these defendants are granted leave to interpose an answer within 30 days of the date of this order. The Dizazzos’ motion is otherwise denied.
These applications call on the court to consider the effect of the recently enacted Home Equity Theft Prevention Act on the rights of both homeowners claiming to have been duped out of their home, and the lending institution now seeking to foreclose on a mortgage made to the party the homeowners claim was part of the scheme.
This foreclosure action was commenced by the filing of a summons and complaint on December 3, 2007, and the Dizazzo defendants defaulted. An order of reference was sought and granted by the undersigned, and upon that order and the referee’s computation the plaintiff bank now seeks its judgment of foreclosure and sale.
In response to the plaintiffs application for the judgment, these defendants have moved by way of order to show cause either to dismiss the action or for a stay pending the outcome of an action they have commenced in this court entitled Dizazzo v Capital Gains Plus, Inc. (Nassau County index No. 0523/08). The electronic records of the clerk do not indicate that any judge has yet been assigned to this action. Inasmuch as these defendants previously defaulted, however, the court must also read their application as one to vacate their default. They bring information to the attention of the court that clearly was known to them before they defaulted, and have presented no explanation for not acting sooner, but given the nature of this informa *775 tion the undersigned will consider it “to achieve substantive fairness in the case.” (Stridiron v Jacob’s Ladder Realty, L.L.C., 33 AD3d 320, 320 [1st Dept 2006].)
The allegations made in the Dizazzos’ later-filed action, as is essentially repeated and amplified in the joint affidavits made by the Dizazzos here, are that they were defrauded into transferring ownership of the subject premises to the mortgagor Oleg Sholomov by the defendants in the Dizazzo action. Washington Mutual Bank, the plaintiff in the present case, has not been named as a defendant in that action.
Reading their papers submitted on this motion as a whole, including the amended complaint in the Dizazzo action and the exhibits submitted here, the Dizazzos allege that the following occurred. The Dizazzos’ home was in foreclosure, as an action had been started by prior mortgagee Wells Fargo Bank in February of 2007. While that action was pending, Vincenza Dizazzo sought another mortgage loan and, under circumstances not revealed to the court on this motion, came into contact with one Angela Campione, who advised her that she had a source for a mortgage loan for people with bad credit. This person offered herself as an intermediary between Ms. Dizazzo and one Stanley Shvartsman, a representative of an entity called Home Funding Group. On April 16, 2007 under other circumstances also not fully explained by the Dizazzos, she was faxed a contract of sale for the premises between her as seller and Oleg Sholomov as buyer (mortgagor herein), which she signed and faxed back.
It should be noted that the Dizazzos raise this contract of sale for the first time in reply, and do not state from whom they received this contract. It does appear that this was not the first time the possibility of a sale was made known to them, however, because at paragraph 15 of the reply affidavit they state in parentheses that they were to remain in the house (by clear implication, even after the sale), indicating that certain terms and conditions of this transaction had been discussed with them earlier but were not represented in the sale agreement. It also is unclear whether this contract arrived before or after her conversation with Campione and Shvartsman. Finally, paragraph 15 of the reply appears to contradict paragraph 10 of the moving affidavit, in which they state that “[w]e thought that we were getting a mortgage only, and did not understand what transpired.” As noted, a contract of sale was faxed April 16 and the closing was May 22. The Dizazzos nowhere state that they did not understand that the document Vincenza received in April was a contract of sale to Sholomov.
*776 Stanley Shvartsman advised Vincenza (apparently by telephone) that a closing would be had on May 22, 2007, that she did not need an attorney and that her husband did not have to be present. On that day she was driven to a location on Queens Boulevard in Queens, New York, by Campione.
At that closing Sholomov was present. Vincenza had an attorney by the name of Diego A. Estrada, whose name does not appear on the copy of the faxed contract of sale but whose name does appear on a contract and rider dated April 9, 2007. The Dizazzos contend that this contract was presented to Vincenza Dizazzo for the first time at the closing in May.
Also present were another attorney named Terence Scheurer, who was representing the buyer Sholomov, one Ilona Masheyev (unidentified), Campione, and Shvartsman. Vincenza alleges that at the closing she signed a series of papers without knowing what they were. She then was advised that her husband Frank Dizazzo’s signature was necessary, and was thereafter driven to a location stated to be a Weikert Realty in East Meadow, New York, where what she claims was Frank’s forged signature was notarized on several documents — including the deed to Sholomov — by someone named Stuart Ringe. She was then driven back to the closing and the transaction was completed.
Among the documents submitted by the Dizazzos with the allegedly forged deed is a settlement statement by Kaufman & Khaldarov, stated to be the “Settlement Agent.” Checks written on its account indicate that it was a law firm utilizing “Loan Disbursement Acct/Attorney Trust Account” and disbursed the loan proceeds. This is strong evidence that Kaufman & Khaldarov were present as agent for the lender, plaintiff Washington Mutual Bank. One disbursement made by Kaufman & Khaldarov was a check for $77,199.69 to an entity named Capital Gains Plus, Inc. The Dizazzos do not allege that they did not know what this entity was, and in another document it is identified as “a company we have a business relationship with.”
Another document is a certification of title naming Washington Mutual Bank and Sholomov as insured under title insurance policies, in which both Frank and Vincenza are noted as the owners of the subject property. Nevertheless, the April 9, 2007 contract names Vincenza alone as seller; Frank was added by way of an amendment dated May (date blank), 2007. The down payment is stated to be $1,000. As noted above, the Dizazzos claim that he was not present at the closing and that his *777 signature was forged. Schedule B of the title report also indicates the presence of the foreclosure action commenced by Wells Fargo.
The court also notes that the HUD settlement statement indicates that the loan amount was $584,250. The amount due seller after all reductions was $217,766.71. The check to the Dizazzos was $87,926.71, which, with the $77,199.69, totals $165,126.40, $52,640.31 less. These figures are based on a contract sales price (as noted in the settlement statement) of $615,000. A closing statement from Mr. Estrada indicates a “purchaser’s credit” of $58,000. This credit appears nowhere on the April 9, 2007 contract and rider noted above.
While the foregoing affidavits and documents present only pieces of a puzzle, it is sufficient for the court to conclude that the defendants may have a defense to this action based upon a questionable mortgage transaction. The absence of Frank Dizazzo at the closing notwithstanding his name on the certification of title and contract of sale, the disappearance and return of Vincenza with the documents now bearing Frank’s signature, including a deed, with no independent question of identity being raised by the plaintiff, and the absence of over $52,000 from what was due the Dizazzos under the settlement statement without any indication of a purchaser’s credit in the documents presented at the closing, meant that the bank’s agent had a sufficient basis for questioning the bona fides of this sale and loan transaction.
Indeed, these factors also must be seen in light of the pending foreclosure action, knowledge of which the plaintiff bank must be charged with. This raises the operation of two statutes found in the Real Property Law — sections 265-a and 266. As noted above, the former is the Home Equity Theft Prevention Act, which was effective February 1, 2007, and thus applicable to this transaction. Section 266 dates from 1909, but applies here as well. That section is entitled, “Rights of purchaser or encumbrancer for valuable consideration protected.” Although the defendants rely heavily on section 265-a, its importance here is that it affects the plaintiff in this action through section 266.
By its terms, Real Property Law § 265-a applies to homeowners and purchasers of some or all of the interest in their homes where homeowners are in default of their mortgages, or where the property is already in foreclosure. The Legislature found that these circumstances render such owners vulnerable to aggressive “equity purchasers” who might, inter alia, induce a *778 homeowner to sell for a fraction of fair market value through the use of unreasonable commercial practices, including misrepresentation and deceit. (Real Property Law § 265-a [1] [a].) The statute was enacted “to provide a homeowner with information necessary to make an informed and intelligent decision regarding the sale or transfer of his or her home to an equity purchaser” and, among other things, to “ensure, foster and encourage fair dealing in the sale and purchase of homes in foreclosure or default” and generally “preserve and protect home equity for the homeowners of this state.” (Real Property Law § 265-a [1] [d].)
The contract of sale in this case is a “[c]overed contract” under this statute because it was incident to the sale of a residence in foreclosure (Real Property Law § 265-a [2] [c]), and Sholomov might be an “[e]quity purchaser” because the Dizazzos indicate that they continued to reside at the home, which meant that the purchaser was not using the property as his primary residence. (Real Property Law § 265-a [2] [e] [i].) It also is possible, however, that Sholomov might not be covered as a person who is a “bona fide purchaser . . . for value.” (Real Property Law § 265-a [2] [e] [vii].) The latter, however, is certainly questionable in that the contract, settlement documents and “purchaser’s credit” indicate that, at most, the buyer invested $1,000 to buy a house for a stated purchase price of $615,000.
It thus appears from the documents alone that the protections of the statute were likely applicable. That being so, a number of requirements under that statute would be triggered, requirements which clearly were not followed. Because these mandates were not met, the owners — defendant movants— might be entitled to rescind within two years of the transaction, a period that has not yet passed. (Real Property Law § 265-a [8].) Obviously, this places the plaintiffs mortgage at risk, in that ownership would revert to parties who were not the mortgagors.
However, the court cannot agree with defendants that the plaintiff bank is necessarily precluded from claiming status as a “bona fide . . . encumbrancer for value” under this statute or Real Property Law § 266, discussed below. It is not directly implicated as “equity purchaser” because it lent $584,250 to Sholomov, which certainly is valuable consideration and thus makes it exempt from the status of an “equity purchaser.” (Real Property Law § 265-a [2] [e] [vii].) Nevertheless, though not an *779 “equity purchaser” under the statute, it must be charged with knowledge, through its agent, of the possible application of the statute and of its violation. The pending foreclosure was of record, the settlement indicated that the buyer was putting up almost none of his own funds, and the contract was obviously noncompliant with the statute.
Further, and as is set forth above, there were substantial irregularities at the closing. Under these circumstances, the court finds that the plaintiff is not necessarily entitled to the protection of its title under Real Property Law § 266. A trier of fact could reasonably determine that plaintiff was on “notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor” and of the statutory violation that a reasonable inquiry would have revealed (Real Property Law § 266), and inquiry would certainly have been reasonable here. (See Merritt v Merritt, 47 AD3d 689 [2d Dept 2008]; LaSalle Bank Natl. Assn. v Ally, 39 AD3d 597 [2d Dept 2007]; Fischer v Sadov Realty Corp., 34 AD3d 630 [2d Dept 2006]; see also Karan v Hoskins, 22 AD3d 638 [2d Dept 2005] [triable issue of fact regarding forged deed bars summary judgment in quiet title action because forged deed is void and conveys no title].)
The court has considered that the events related by the moving defendants have inconsistencies, as indicated above, and the bank may ultimately be able to demonstrate that the Dizazzos were willing participants in a plan to save their home, in which the sale to Sholomov and the loan transactions were necessary parts, and that there was no fraud on Sholomov’s part. That would mean that the plaintiff ultimately could assert Real Property Law § 266, because a violation of Real Property Law § 265-a by Sholomov, even if it occurred, can be made out for violations having nothing to do with fraud. However, in opposition to the defendants’ present motion the plaintiff has produced only an attorney’s affirmation, not stated to be on personal knowledge, which is unsupported by any affidavit or documentary proof that would serve to contradict or explain away the irregularities discussed above. It is therefore without any probative value.
In sum, the defendants have presented to the court enough evidence to permit the defendants to serve an answer, and to allow discovery to go forward. However, there is no basis to dismiss the present foreclosure action at this juncture. Nor is there a basis for a stay pending the outcome of the other action commenced by the Dizazzos, because the bank is not a party to *780 the other action, and thus any findings or conclusions reached by a court in that matter would not be binding on it. After discovery is completed the plaintiff is granted leave to reapply for its judgment by way of a summary judgment motion, should it choose to do so. The court will not vacate the referee’s report given the fact that it applies to monies owed by Sholomov, who remains in default.